

## Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

January 25, 1995

Honorable O. H. "Ike" Harris
Chair
Committee on State Affairs
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-319

Re: Whether section 395.011(c) of the Local Government Code authorizes a municipality to contract to provide capital improvements to an area outside its corporate boundaries and extraterritorial jurisdiction if the area lies within the boundaries of another municipality and related questions (RQ-669)

Dear Senator Harris:

You asked us several questions involving the proper interpretation of chapter 395 of the Local Government Code, which provides a method by which municipalities and certain other governmental entities may finance capital improvements necessary to accommodate new development. *See generally* Bray, Caudill, & Owen, *Once More, the Trilogy, In Retrospect: An Essay on the Virtues of Development Agreements in Texas,* 32 S. TEX. L. REV. 1, 12-14 (1991). You provided the following factual background for this request:

> The City of Leon Valley is currently in negotiations with the City of San Antonio in regard to a wastewater contract. The City of San Antonio is the regional collector for all wastewater. . . . Negotiations between the City of San Antonio and several suburban municipalities are currently at an impasse due to a difference in interpretation of [chapter 395 of the Local Government Code].

We understand that the suburban municipalities believe the City of San Antonio may collect impact fees for the wastewater service pursuant to a contract for collection if the city recognizes them as impact fees belonging to the city and includes them accordingly in its capital improvements plan. We understand, on the other hand, that the City of San Antonio contends that the impact fees belong to the suburban municipalities and that the municipalities themselves are obligated to pay for the wastewater collection service.

You first ask whether section 395.011(c) of the Local Government Code confers upon a municipality the authority to contract to provide capital improvements to an area

outside the municipality's corporate boundaries and extraterritorial jurisdiction if the area is within the boundaries of another municipality. Section 395.011(c) provides as follows:

> A municipality may contract to provide capital improve-
> ments,[1] . . . ., to an area outside its corporate boundaries and extra-
> territorial jurisdiction[2] and may charge an impact fee[3] under the

---

[1] In the context of chapter 395 of the Local Government Code, "capital improvement" designates

> any of the following facilities that have a life expectancy of three or more years and are owned and operated by or on behalf of a political subdivision:
>
> (A) water supply, treatment, and distribution facilities; wastewater collection and treatment facilities; and storm water, drainage, and flood control facilities; whether or not they are located within the service area; and
>
> (B) roadway facilities.

Local Gov't Code § 395.001(1). "Service area," as mentioned in (A) above, means "the area within the corporate boundaries or extraterritorial jurisdiction, . . . , of the political subdivision" that the capital improvements will serve. *Id.* § 395.001(9); *see infra* note 2 (defining "extraterritorial jurisdiction"). *But see infra* pages 6-7 (construing definition of "service area").

[2] Section 395.001(9) of the Local Government Code, defining "service area," requires a political subdivision to determine its extraterritorial jurisdiction in accordance with chapter 42 of the Local Government Code. Pursuant to section 42.021 of the Local Government Code, a municipality's extraterritorial jurisdiction is the unincorporated area contiguous to the municipality's corporate boundaries that is located within a specified distance of the boundaries.

[3] An "impact fee," sometimes referred to as a "capital recovery fee," is a fee imposed upon new development to pay for public facilities that new growth necessitates. *See* Hearings on H.B. 1011 Before the House Comm. on Nat. Res., 70th Leg. (Apr. 8, 1987) (statement of Lyle Johansen, Executive Director, Texas Ass'n of Builders) (copy available from House Committee Coordinator); Bray, Caudill, & Owen, *Once More, the Trilogy, In Retrospect: An Essay on the Virtues of Development Agreements in Texas,* 32 S. TEX. L. REV. 1, 13 (1991). Section 395.001(4) defines "impact fee" as

> a charge or assessment imposed by a political subdivision against new development . . . to generate revenue for funding or recouping the costs of capital improvements or facility expansions necessitated by and attributable to the new development. The term includes amortized charges, lump-sum charges, capital recovery fees, contributions in aid of construction, and any other fee that functions as described by this definition. The term does not include:
>
> (A) dedication of land for public parks or payment in lieu of the dedication to serve park needs;
>
> (B) dedication of rights-of-way or easements or construction or dedication of on-site water distribution, wastewater collection or drainage facilities, or streets, sidewalks, or curbs if the dedication or construction is required by a valid ordinance and is necessitated by and attributable to the new development; or
>
> (C) lot or acreage fees to be placed in trust funds for the purpose of reimbursing developers for oversizing or constructing water or sewer mains or lines.

> contract, but if an impact fee is charged in that area, the municipality
> must comply with this chapter.[4] [Footnotes added.]

The legislature codified chapter 395 in 1989. *See* Acts 1989, 71st Leg., ch. 1, § 82(a). The legislature intended the codification to be nonsubstantive. *See* Acts 1989, 71st Leg., ch. 1, § 82(a); *see also* Acts 1989, 71st Leg., ch. 566, § 1(a). The legislature enacted chapter 395's predecessor, V.T.C.S. article 1269j-4.11, in 1987 as Senate Bill 336. *See* Acts 1987, 70th Leg., ch. 957, §§ 1-11; Bray, Caudill, & Owen, *supra*, at 12.

In 1987, during the second reading of Senate Bill 336 on the House floor, Representative Millsap added to section 2 of the bill the sentence that is now codified as section 395.011(c) of the Local Government Code—the subsection about which you inquire. Debate on S.B. 336 on the Floor of the House, 70th Leg. (May 21, 1987) (statement of Representative Millsap) (tape available from House Video/Audio Services). Representative Millsap explained the addition simply as an amendment concerning a city's extraterritorial jurisdiction. *Id.* We found no other legislative history indicating the legislature's intent.

On its face, section 395.011(c) authorizes a municipality to contract to provide capital improvements to an area outside its corporate boundaries and extraterritorial jurisdiction and to charge an impact fee under the contract. *See* 13 E. MCQUILLIN, MUNICIPAL CORPORATIONS § 37.11, at 51 (3d ed. 1987) (stating that, in general, municipal corporation lacks authority to provide improvements beyond its corporate limits unless legislature has provided otherwise). Nothing in the statute limits a municipality to contracting to provide capital improvements only to areas outside the corporate boundaries of another municipality.[5] Nor does the statute limit a "providing" municipality to charging impact fees only in areas outside the corporate boundaries of the "receiving" municipality.

Section 402.001(b) of the Local Government Code authorizes a municipality to purchase or operate a utility system within its boundaries. *See also* Local Gov't Code § 43.056(a) (requiring municipality that proposes to annex area to provide, "by any of the

---

[4]The purpose of the Impact Fee Act, codified as chapter 395 of the Local Government Code, is to create a uniform process by which a political subdivision may consider, adopt, and assess impact fees. Bray, Caudill, & Owen, *supra* note 3, at 12. Consequently, chapter 395 is largely procedural, although it also limits the kinds of capital improvements a political subdivision may fund with impact fees. *Id.; see* Local Gov't Code §§ 395.012, .013.

[5]In the factual situation you present, we note that the City of San Antonio is negotiating with representatives of other municipalities to provide wastewater services to those municipalities. We are uncertain as to whether the city will provide wastewater services for the entire municipality or for an area within the municipality. Because the suburban municipalities themselves are involved in the negotiations, we need not consider whether a property owner whose land was inside the corporate boundaries of one municipality may, on his or her own behalf, contract with another municipality to provide wastewater services for his property.

methods by which it extends the services to any other area of the municipality," for extension of municipal services to annexed area). If a municipality chooses to provide utility service to all or some of its citizens by contract with a providing municipality, we believe that it may. Furthermore, if the receiving municipality chooses to pay for the capital improvements that the providing municipality requires by permitting the providing municipality to charge impact fees, we believe that the receiving municipality may. If a providing municipality desires to charge an impact fee in the receiving area, it may do so only if the contract with the receiving municipality complies with chapter 395 of the Local Government Code. *See* Local Gov't Code § 395.011(a). Furthermore, the providing municipality may charge an impact fee only in accordance with chapter 395. *See id.* § 395.011(c).[6]

In short, we conclude that section 395.011(c) authorizes a municipality to contract to provide capital improvements to an area inside the corporate boundaries of another municipality. Additionally, section 395.011(c) authorizes the providing municipality to charge an impact fee within the corporate boundaries of the receiving municipality, but only if the parties have contracted accordingly and if the providing municipality complies with chapter 395 of the Local Government Code. *Cf.* 13 E. McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 37.11, at 51 (3d ed. 1987) (stating general rule that one municipality may not tax its own residents for improvement within limits of another municipal corporation).

You next asked whether, under section 395.0455 of the Local Government Code, a providing municipality that contracts to charge an impact fee to an area within the jurisdiction of another municipality may include the area in the providing municipality's capital improvements plan. Section 395.0455(a), which pertains to "Systemwide Land Use Assumptions," provides in pertinent part as follows:

> (a) In lieu of adopting land use assumptions[7] for each service area, a political subdivision may, except for storm water, drainage, flood control, and roadway facilities, adopt systemwide land use assumptions, which cover all of the area subject to the jurisdiction of the political subdivision *for the purpose of imposing impact fees under this chapter.* [Footnote and emphasis added.]

---

[6]A municipality also may contract with a providing municipality for wastewater services under section 791.011 of the Interlocal Cooperation Act, Gov't Code ch. 791. Under such an interlocal cooperation contract, however, the providing municipality may not charge an impact fee within the corporate boundaries of the receiving municipality. *See* Local Gov't Code § 395.011(c).

[7]Section 395.001(5) of the Local Government Code provides that "[l]and use assumptions includes a description of the service area and projections of changes in land uses, densities, intensities, and population in the service area over at least a 10-year period." *See supra* note 1 (defining "service area").

The legislature added section 395.0455(a) to chapter 395 of the Local Government Code in 1989, following the codification. *See* Acts 1989, 71st Leg., ch. 566, § 1(b) (House Bill 1786). House Bill 1786, which proposed adding section 395.0455 to the Local Government Code, added to chapter 395 other sections, all of which the legislature hoped would streamline the process a political subdivision must use to adopt impact fees. *See* House Comm. on State Affairs, Bill Analysis, H.B. 1786, 71st Leg. (1989); Hearings on H.B. 1786 Before the House Comm. on State Affairs, 71st Leg. (Apr. 25, 1989) (statement of Representative Laney, author of bill) (tape available from House Video/Audio Services); Hearings on H.B. 1786 Before the Senate Comm. on Intergovernmental Relations, 71st Leg. (May 25, 1989) (statement of Senator Armbrister) (tape available from Senate Staff Services). Senator Armbrister, who presented the bill to the Senate Committee on Intergovernmental Relations, explained that the process adopted in 1987, with the enactment of V.T.C.S. article 1269j-4.11, was a burdensome one for cities because the statute required a city separately to adopt two plans, a land use assumption plan and a capital improvements plan. *Id.*; *see also* Hearings on H.B. 1786 Before the House Comm. on State Affairs, *supra* (statement of Frank Turner, Planning and Transportation Director for City of Plano). Thus, the municipality was required to hold two separate hearings and comply with statutory notice requirements for each hearing. Hearings on H.B. 1786 Before the Senate Comm. on Intergovernmental Relations, *supra* (statement of Senator Armbrister). To alleviate the problem, House Bill 1786 proposed, among other things, allowing municipalities to use area-wide adoption plans for each service area. *Id.*; *see also id.* (statement of Carl Shahady, representing Texas Municipal League). The municipality therefore avoids having to adopt a land use assumption plan for each individual service area. *Id.*

Initially, we note that, in your second question, you cited section 395.0455 of the Local Government Code, which applies only to the adoption of systemwide *land use assumptions*, although you asked about a capital improvements plan. While both are necessary to the adoption of an impact fee, the two are distinct. A land use assumption describes the service area and projects changes, *e.g.*, changes in land uses, densities, intensities, and population, that the municipality believes will occur in the service area within the ensuing ten years. Local Gov't Code § 395.001(5). A capital improvements plan, on the other hand, identifies capital improvements or facility expansions[8] for which a local government may assess impact fees. *Id.* § 395.001(2); *see id.* § 395.014 (prescribing requirements for capital improvements plan).

Prior to the 1989 amendments to chapter 395, a political subdivision considered and adopted the land use assumptions and capital improvements plans separately. Furthermore, the political subdivision had considered the land use assumptions and capital

---

[8]Section 395.001(3) of the Local Government Code defines "facility expansion" as "the expansion of the capacity of an existing facility that serves the same function as an otherwise necessary new capital improvement, in order that the existing facility may serve new development. The term does not include the repair, maintenance, modernization, or expansion of an existing facility to better serve existing development."

improvements on a service-area-by-service-area basis, rather than a systemwide basis.[9] Since the 1989 amendments to chapter 395, a political subdivision, including a municipality, may abbreviate the procedure described above in two ways: first, pursuant to section 395.0515(a), the political subdivision may adopt the land use assumptions, the capital improvements plan, and the impact fee simultaneously; and second, pursuant to section 395.0455(a), the political subdivision may adopt systemwide land use assumptions, which cover all of the area subject to the political subdivision's jurisdiction for the purpose of imposing impact fees instead of only the area within a single service area. *But see id.* § 395.0515(d) (prohibiting political subdivision from consolidating hearings on land use assumptions and capital improvements plan if person timely requests, in writing, separate hearings).

Section 395.0455 expressly authorizes a political subdivision, including a municipality, to adopt land use assumptions that cover "all of the area subject to the jurisdiction of the political subdivision for the purpose of imposing impact fees under [chapter 395]." We believe that, in the context of section 395.0455, "all of the area subject to the jurisdiction of the political subdivision" includes all of the area from which a municipality collects impact fees pursuant to section 395.011. Under section 395.011, of course, that area may be located within the corporate boundaries of another municipality. Section 395.0455 pertains only to land use assumptions, however; it does not affect a municipality's jurisdiction to prepare a capital improvements plan covering the area within the corporate boundaries of another municipality.

We note that, while section 395.001(2) of the Local Government Code defines "capital improvements plan" without limiting the scope of a plan to a service area, other sections of chapter 395 appear to do so. *See id.* § 395.014(a), (b); 395.049(c)(4); 395.0515(a). For purposes of chapter 395, a "service area" is "the area within the corporate boundaries or extraterritorial jurisdiction . . . of the political subdivision" that the capital improvements will serve. *See id.* § 395.001(9). Construing "service area" in the various provisions of chapter 395 to limit a capital improvements plan only to the area

---

[9]Prior to the adoption and effective date of House Bill 1786, a political subdivision had to notice and conduct a public hearing to consider land use assumptions within a "designated service area" that the municipality then would use to develop a capital improvements plan. *Id.* § 395.042; *see id.* § 395.044 (containing notice requirements for hearing on land use assumptions). After the hearing on the land use assumptions, the political subdivision had to vote on an ordinance, order, or resolution approving the land use assumptions. *Id.* § 395.045.

Once the political subdivision had approved the land use assumptions, it could provide for the development of a capital improvements plan. *Id.* § 395.046. Upon completion of the capital improvements plan, the governing body of the political subdivision had to notice and conduct a public hearing on the capital improvements plan and the imposition of an impact fee. *Id.* § 395.047; *see id.* § 395.049 (containing notice requirements for hearing on capital improvements plan and impact fee). Within thirty days after the public hearing, the political subdivision must have voted to approve or disapprove the adoption of the capital improvements plan and the imposition of the impact fee. *Id.* § 395.051.

within a municipality's corporate boundaries and extraterritorial jurisdiction is, we believe, problematic, given the legislature's express statement in section 395.011(c) that a municipality may contract to provide capital improvements outside those areas.  2B N. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 53.01, at 229-30 (5th ed. 1992) (stating that courts must construe statutes harmoniously if such construction is reasonable); 67 TEX. JUR. 3D *Statutes* § 133, at 740 (1989) (stating presumption that legislature intended provisions relating to same subject to operate harmoniously). Furthermore, a providing municipality will be unable to determine the true extent of capital improvements and the true cost unless it may include in its calculations all of the area for which it is authorized to provide such improvements.  Accordingly, we construe the definition of "service area" to include all of that area to which a municipality is authorized to provide capital improvements, either because the area is within the municipality's corporate boundaries or extraterritorial jurisdiction or because the municipality has contracted with another municipality to provide capital improvements to that area.[10]

You predicated your third question upon a finding that chapter 395 provides no mechanism by which a municipality may charge impact fees within another municipality. Because we have concluded that a providing municipality may collect impact fees under a contract with the other municipality or by the consent of the other municipality, we need not answer the third question.

---

[10]As we stated above, *see supra* page 3, Representative Millsap proposed adding the statutory predecessor to section 395.011(c) of the Local Government Code on the floor of the House during the second reading of Senate Bill 336. The definition of "service area," which provided substantially as it does currently, had been added previously. *See* C.S.S.B. 336, Senate Comm. on Economic Development, Acts 1987, 70th Leg.

## S U M M A R Y

Section 395.011(c) of the Local Government Code authorizes a municipality to contract with another municipality to provide capital improvements to an area inside the corporate boundaries of the second municipality. Section 395.011(c) authorizes the municipality that wishes to provide the capital improvements to charge an impact fee within the corporate boundaries of the municipality that wishes to receive the capital improvements if the municipalities have contracted accordingly and the providing municipality complies with chapter 395 of the Local Government Code.

Section 395.011(c), in conjunction with the definition of "capital improvements plan" in section 395.001(2), authorizes a municipality that contracts to provide capital improvements to an area outside its corporate boundaries and extraterritorial jurisdiction to include the area in the municipality's capital improvements plan.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General